424-0319 WC Mechanical Inc. Appellant by James Holchek v. Illinois Workers' Compensation Comm'n et al., Richard Boyden, Appalachia, by Tracy Jones. Mr. Holchek, you may proceed. May it please the Court, Mr. Holchek for the appellant. In this case, Mr. Boyden, a union on May 8, 2018, he was driving in his normal commute to work. He was not paid any compensation for his commute by the employer. He was not driving the company truck. He was driving his personal vehicle. He was not paid any mileage by the employer for the transportation going to work. He was not transporting any tools on that day. The route was not prescribed by the employer. It was of his own choosing. His work day had not started. He was within the territory of the local pipe fitting union that he worked at when the accident occurred. He was not under any common duty when the accident occurred. The collective bargaining agreement defined the premises of the employment as the client, Mr. Boyden, was working for. He had never saved one orientation day when the triceratops plant, he had never traveled between job sites during his employment with Mechanical. I think this case fits squarely within the Uber-Carini. He was not, which is well-established case law, that the employer's premises in a situation like this is the job site. Further, the collective bargaining agreement specifically defines the premises as the job site. Also, was there another definition in the collective bargaining agreement of premises other than the one that was describing locations relevant to the substance abuse program? There were three locations that could be. It was the job site, or the employer's premises, or the yard where they had pickup materials. Was that definition within the discussion of the substance abuse program? I'm not sure if it was. He wasn't in any substance abuse program to my knowledge, or was it in the record? Right. I mean, that's why I bring it up because you cited the CBA for that definition, but within the CBA, that section appears to be talking about a substance abuse program. Yeah. I read that as in general, and I don't want to get fixated on the CBA. The CBA is not the terminal. It's a piece of the evidence. Regardless of the CBA, the CBA is additional. It just does describe, in my opinion, the location of the premises, but without it, this case still falls clearly under Newburgh-Perini. There's a Rule 23, Jones versus Mormon, which also describes the premises. Jones, specifically, Jones was a roofer. At no time did he ever work at the employer's physical location. He worked from job to job. He was a roofer. Essentially, every day, he went to a roofer and remodeler. He went to a different premise, different job site. The court had described the job site as the employer's premises. In that case, the second issue was whether or not the transportation in the employer's van was an increased risk. If the employer's premises was not the job site, the petitioner would have been a traveling employee the entire time. The second part of the evaluation, whether or not the employer's van was an increased risk, that would have never had to take place. I think the focus should be on the employer's premises is the job site, just like every other pipe fitter that worked for mechanical or every roofer remodeler, similar to Jones versus Mormon. When you look at the job site, that's step one, being the premises. Then, if we look at the plethora of well-established appellate case law, there is no increased risk. It doesn't fit in any of the definitions. The other cases, he was within his local, unlike the engine worker who was traveling 200 miles. Mr. Boyden, in fact, moved from local 597 to local 23 to be closer to home. That was his voluntary choice. The accident was clearly within the local local 23's jurisdiction. Can I ask you to just focus a little bit on that jurisdictional definition? That territory was, I'm not sure how the union phrased it, but that was considered his home job site or whatever. The local establishes boundaries of where the, very strange boundaries sometimes. Sometimes they cut a town in half and they include a Home Depot, as in this case, but the local describes territory boundaries. He was within those territory boundaries when he was. How would that help us decide this case and what do you think the rule would be if we did find that was a significant factor? I think it aligns with Newburgh-Perini. In Newburgh, the engine worker had traveled between 250 and 200 miles from his home. There's a great analogy in paragraph 25 of Newburgh that describes an engine worker comparing a Doherty in Newburgh-Perini to an engine worker who resides within that local. The court said that if compensation was paid to Doherty in Newburgh, when it clearly would not be paid to someone within the local, such as Mr. Boyden in this case, that would be unjust. That was one of the specific reasons. It's almost uncanny that they use the analogy, which is correctly exactly on point in this case. I do see your point on that, counsel, but to me, a big distinction is that in, and you call it Newburgh-Perini? Sorry, venture Newburgh-Perini. No, that's okay. It's kind of a strange case or a company name, but there didn't the guy really, he up and moved himself to take this job at the plant, but there's nothing in the case that leads me to believe he's ever sent anywhere else. He's going there, he's going to do all his work there. He deliberately takes this job far from home. It was temporary, but every day was going to be at that plant. Unlike, it's different for here, the claimant is moving every two and a half weeks, maybe. He's at 29 different sites over the time of his employment there, which was about 19 months. Yeah, he did work, and I agree with you that he did work in different sites. However, he'd never, except for the orientation day, one day where he went to the Chrysler plant and then went to a job location, he'd never moved sites once. Now, on that day, if he was traveling from the orientation to the job, he's a traveling employee, in my opinion, because there's travel within that day, but that was the only day in his entire employment that he ever traveled between job sites. So, I'm hearing for you, the line is, if somebody's at the same place all day, then they can't be traveling employee. I'm going to guess absence some other inducio. Yeah, and I think the, exactly. I think that's, and it's illustrated well in Jones versus Mormon, the rule 23 decision, which I think is illustrative. He was a referee modeler in that case. Councilor, can I ask you a question? Yes. You cited Jones versus Mormon, which is an unpublished opinion issued in 2019. Is that citable? I think as a rule 23, it can be, it's not presidential, of course, but it does. I think rule 23 provides, unless it was issued after, I think January 1st, 2023, you cannot cite that case. And you cited not only Jones, you cited Harris, you cited Central Grocery, and I think one other. Those cases should never have cited. But I agree with you, but they are still persuasive and they are illustrated of, and I think you were. But if you can't cite them, Councilor, you can't cite them, period. I mean, it's just that simple. The rule says you can't cite them unless they were issued after a certain date. These cases were not issued after that date. And your honor, I think I'm not, I don't believe I'm citing them. I'm using them to illustrate, and the orals in that case were very illustrated of, you know, the gentleman was a roofer. Councilor, I don't think you're getting the message. Okay, I'll move on. Mr. Holtrep. Yes. This whole line of cases, isn't it really at the bottom an increased risk issue? I think that's what, you know, there's the right case, you know, discusses three different ways for when you look at traveling employees. And it's the third, this case would fall under the third aspect, whether it was reasonably, which essentially goes to your point, is there any increased risk? And in this case, this is, you know, very clearly, no increased risk. He's the same as every other pipe fitter, that mechanical employees, and the same as every other, I submit to you, every other union employee in the state of Illinois, they go to, that's the nature of the work, you go to the job site, roofer, pipe fitter, carpenter, they're not ever performing work, you know, they're building things, they can't perform work at the employer's location, they have to perform work at the site of their, of the, you know, of the job site that and so, to, I think this gets into a public policy argument to, to say he's a traveling employee, that would make every other union worker, you know, that would make them a traveling employee for just going to any job site in the, in the state. And that would be a vast expansion of the appellate, sorry, of the traveling employee doctrine, and lead to really some unjust and unintended consequences. If they were traveling employees, they'd be covered portal to portal. So anything that would reasonably be foreseeable that what could happen during that day, if they went to lunch and had a sandwich and choked on it, that would be reasonable and if, if they were a traveling employee, and they'd be covered portal to portal, that would be a vast and incredible expansion of the traveling employee doctrine. But would it where he, you know, we've got an employee here who's going to 29 sites in 18 months. I mean, I hear what you're saying, and I'm not disparaging, you know, the weighty considerations. But if it's, but in this case, then it will, you, you're concerned of a dry in every, every union employee or construction worker. But I think most union construction workers do work, they work at job sites, they don't work. And they're gonna, they're not gonna be, I know, I get it. I understand that. But like, where I'm wondering what, where you think the line is. So if they went to more than two a day, would they be traveling? Clearly, you know, or if they traveled between job sites regularly. So if you had a, they traveled between two job sites a day, would they be commuting on their trip to the first site, in your opinion, if they were traveling, because that then travel would be an inherent part of the job, because they were traveling regularly between job sites. So that travel, they, I think they would be covered during the commute to and from work, because then travel would be an inherent part of the job. So that the, the one time he did travel locations, he had to have a vehicle to get from, you know, his home to the Chrysler plant, did the orientation. And then he was sent to, I don't remember another, another job site. On that day, I think he's a traveling employee, because he had to travel, he had to get to Chrysler, do the orientation, then he had to travel to a different, different location, different job site. So if he would have been in an accident coming to work or going home to work, I think he'd be covered because of that commute during the, you know, during the day. But in here, he wasn't. He would, that was the one time in his, his employment that he had traveled between days. So very fact specific, you know, to the day. Mr. Holcheck, you're, the red light is on, your time is expired. You will have time in reply. Are there further questions from the court? I guess I would ask one last question, counsel. Should we be concerned about Wright, the Wright case where the Supreme Court rejected the idea that being, whether you're traveling or not depends on how long you're at the site? I think the focus should be on back to Newburgh-Perini, which is, you know, back to what day, what, what they were doing on that day. If there wasn't travel within that, within that day, that they're just the same as the general public and anybody else going to work. And it aligns very well with Newburgh-Perini. So I don't think so, Your Honor. No. Any other further questions? Okay. You'll have time in reply, Mr. Holcheck. Thank you. Ms. Jones, you may respond. May it please the court, counsel. Tracy Jones for the FLE in this case. I'm going to start directly with the discussion of Venture Newburgh and why that case is not similar and shouldn't be used. In Venture Newburgh, the court's discussion, the reason why they said he wasn't a traveling employee is because there wasn't work available in his local jurisdiction. There wasn't work available with the employer at a job site that he normally would go to, but he had the opportunity to either get unemployment or to bridge the gap by getting another job with someone else. And he chose voluntarily to uproot his life and to travel 200 miles away to live in one location and report for a job at one single location. He was going to the same place day in, day out. There was never a risk that he would be sent to another job site. He was not in any way disciplined or it was a voluntary position, meaning he could take it or he could turn it down. He didn't risk disciplinary action if he said no to going there. He reported at the same time every day. That's the distinction, right? It's the same as if I work at Schnucks Gas Station on Main Street and I decide to quit that position and I'm going to go work at Schnucks Gas Station or Schnucks Grocery Store 200 miles away and I'm going to move my home. I can choose based on where I work to move my home someplace closer to make my commute easier. That's the distinction. In this case, Mr. Boyden didn't have that luxury. He was told each day at the end of the workday where he was to report the next day and he had no control over where he would be sent. He could be sent someplace that's five miles away from his home. He could be sent someplace that's 200 miles away from his home. He had no control and if he turned that down, if he said, you know what? I don't feel safe driving that distance. I'm not going to go to that job. I want to go somewhere else. He would be disciplined for it and the witness at trial confirmed they could face disciplinary action or not get placed in any other job, ergo terminated, if he refused to go to a specific job location. So, that's the big difference between Venture Nuremberg and this case. So, turning to a couple things that counsel said. So, Ms. Jones, now we're throwing in a concept of control, right? We are, absolutely. And that is where Venture Nuremberg and that is where Sostrom and Wright and Chicago Bridge, if you look at those decisions, almost every one of them mention the lack of control, the choosing the location of their home relative to the spot they would drive to to work. And in this case, Mr. Boyden didn't have that luxury. Now, counsel... I'm talking about a little bit more higher order control. In other words, if you look at the Act and you look at the purpose of the Act, beneath all of that is when does, when is the employer's liability for injury attached to the employee? Is it when there is control by the employer over the employee? That is one of the factors. And I think what you're getting into... Well, I mean, I think it's a big concept. It is a huge... I mean, we got all these factors, which are somewhat result-oriented factors we create in Okay. But isn't that the underlying thing that liability in the sense of liability, responsibility, attaches when the employee is in a being controlled situation? Absolutely. Because if you look at the primary or preliminary issue of whether an employee is an employee or an independent contractor, the biggest factor is control over that employee. Exclusivity of employment, can they work for someone else or not, right? Can this boiler maker or pipe fitter go work and do jobs for other people or only for mechanical ink? They look at, do they control the hours? Can they hire and fire? Can they discipline if they turn down work? That is a crucial first step analysis in whether someone is an employee and the act applies. So yes, control is a major issue. And I think if you look at control in each of the cases where the courts have found traveling employee, you will find that same level of control that we have in our case here versus those cases where there's no control like Venture Newberg, where there's no control and the court says, wait a minute, that's a big employee. So I hope that answers your question. Can I interrupt then just related to that? I talked a little bit with counsel about the territorial jurisdiction that was attached to, I think the plaintiff's local, does that factor in here? I mean, he was within, I guess you might consider it that choice. Is there a fair argument to be made that by virtue of attaching himself to that local, then he chose this area and therefore maybe was more in control of that risk or at least had some measure of it? So my answer actually is no, it doesn't change the analysis. And here is why. First of all, if you go through the cases, if you're going to use territorial jurisdiction, that if they voluntarily place themselves within a territory and any travel, regardless of the number of times per day or day-to-day means they're not a traveling employee, as long as it's within that territory, you are going to be in essence saying the Supreme Court's decision in Sostrom was wrong because in Sostrom, he was an engineer. He was assigned, he had a home plant. He was assigned to oversee construction in another plant in his territory. Wright is a construction worker. He was assigned to territory out of state. He covered several states. He was working in another state at his injury. So territory would preclude any injury if we use this rule, it would preclude his case. Chicago Bridge, he was a member of the union. He's Boilermaker. Again, he was within the territory. So you'd be overturning that case. You would be overturning the case in Curtis. That's the branch manager who was assigned to work between two branches. He traveled sometimes only one branch a day, but other days, multiple branches. But it was only those two places in the same town. You'd be reversing that case. You would be reversing Merzlach, which is the cleaner that was in the van who went to multiple sites. So you'd be reversing that holding. And I could keep going if you want. Allenball, the police officer who went between the police headquarters and his district. Police officers are employed to work in a district, a territory. You'd be reversing that. So the answer to your question is no. The even if you voluntarily choose a certain territory, it does not preclude a finding of traveling employee. That takes me actually to the next point which counsel raised about if they go to more than one location per day, they're traveling. But if they only go to one location a day, they're not traveling. And again, that cannot be the rule for the same reason as territory. If we make that the rule, again, Sostrom gets reversed because he was going to one plant every day for a few months. Wright gets reversed because he was out of state supervising the installation of a machine at a single location for several weeks. Chicago Bridge gets reversed because, again, he was working at a job site out of state for several months. Let's see. Yeah. And that would so that would preclude all of those. Cox. Cox was the foreman of an excavating crew. Again, he was going to a job site where he was assigned a single job site for a period of time. You'd be reversing Cox's decision. Miss Jones, we get the picture here. So what is the rules or analysis that you're proposing that avoids this effect in these other cases? So the analysis, and I understand that there is a worry that this expands the employee doctrine, but I don't think it actually does. The analysis is very simple. If you are employed to work at an employer's location and you have a single job site that you report to day in, day out, your travel to and from that job site is not a traveling employee. It's a commute, not compensable. However, if the employer exerts control over the employee and can require that employee to go to other job sites that are not the employer's premise, meaning own, controlled, maintained, day after day by the employer, that person is a traveling employee from the moment they leave their home until they return back home, with the minor exceptions of deviations, which are talked about in the case law, okay? Prior tells us this, the case in Prior, right? His injury, the reason why it wasn't compensable is he was taking his suitcase from his front door to his car, putting it in his car, and then he had to drive to the yard, right? In my analysis, because Mr. Boyden is not first going to the employer's job site and then off to a job site. He went from his home directly to a job site. He's covered portal to portal, door to door. What about Appellant's argument, though, that would essentially say every construction worker union member would be considered a traveling employee? Do you just accept that and agree that that would be the case? I agree that if you look at our case law currently, yes, every construction worker, boiler maker, pipe fitter, any of these union workers who travel to job sites directly from their home, the law already says they're a traveling employee. I think the analysis is already clear that this is not a questionable fact pattern. Council is arguing that I'm expanding the doctrine, and I don't think it is an expansion. It's not a change. It is applying the case law and the doctrine that already exists, and yes, it covers all of those workers, assuming, again, going back to Justice Holdridge's question, assuming that there's that level of control where they can't turn down that assignment, they can't determine where they're going to live relative to the location they're going to be sent to, that sort of thing. Control is a huge part of it, but yes, the case law clearly already supports that Mr. Boyden is a traveling employee. If other practitioners or injured workers haven't figured that out and haven't raised those claims in the past, that doesn't mean that the doctrine didn't exist. It just meant it wasn't pushed. Thank you. Are there any other questions I'm happy to answer? What about a situation, so let's say the employee is injured going to a job site being directed by his employer to go to that site, is that a commute or is that a traveling employee at that point in time? If he first reports to the employer's premise and then he's directed somewhere else or he's just told... No, he gets a call, says go to XYZ, we have a job for you to do, we've contracted for, and so he leaves home, goes to that site, begins work, is that a commute? No, he is being directed to go to a job site, which is not his normal workplace, so he is a traveling employee from the moment he left. What is a normal workplace for a pipefitter? Yep, so in this scenario where they have to report to the employer's main office or their shop or warehouse, somewhere where they would pick up tools or trucks, etc., that would be the employer's premise. In a lot of these guys, they don't report to an employer's premise directly, they go straight to the job site, whatever that may be. So is it your theory with these people that have to report to the employer's premises, they're not a traveling employee when going from home to the employer's premises, but they are traveling employees when they leave the employer's premises to go to an outlying job site? Absolutely, yes. This increased risk notion that your opponent was asked about, is the increased risk a comparison of the risk of the claimant as against other tradesmen, or is it a risk as compared between the claimant and the general public? Risk is assessed based on comparison to the general public, and I would encourage you to look at case law regarding police officers and first responders because they talk about increased risk relative to other police officers versus the general public, and the courts have said very clearly it's general public, it's not like situated employees. So tradesmen are not compared to tradesmen, tradesmen are compared to the general public. The increased risk in this scenario is the fact that he's on the roadway and he can't control his drive between his home and a fixed work site, because that changes at the whim and control of the employer. So the increased risk is he's put on the roadway to drive wherever the employer directs him to drive day to day, that's the increased risk. And the courts said, and I've cited in my brief, the courts have very clearly said motor vehicle accidents when traveling to work sites is an increased risk as compared to the general public. So that discussion's in my brief, and I'll rest on my citation and argument on that unless there's further questions on it. Well, just to extend it out, that construction worker who's working for some sort of contractor at a site, his employer's a contractor, he doesn't go to the employer every day, goes straight to the site, what if it's two years? Two years and he lives a mile away, does that matter? Actually, and I do think this is where the court could, if they wanted to try to further delineate a rule, right? You could sit there and say, okay, if you work at the same job site, and you're there for a two-year duration, that's your work premise, right? Or if you're there for six months, that's your work premise, if you aren't moving to other job sites. I don't know though, that the court wants to do that and to get that specific in a rule as opposed to a case-by-case analysis. And here's why I question whether we would want to do that. And that's, if you look at Sostrom, and you look at Wright, and you look at Chicago Bridge, in some of those cases, these guys were sent to like oversee the installation of a machine for four months at a time, or they were overseeing construction of a plant that took 18 months. How do we delineate a set time period, where we aren't also then encouraging that guy that, hey, I'm part of the union, I can jump from this employer to that employer every single month. If we just say, hey, you have to be there more than a month, then doesn't that, isn't he all of a sudden being included, even though he's jumping from employer to employer and working at only one site for a short period of time. So I think there's a little risk if we get too quantitative in that definition. But I do think, yes, that is a question that eventually could be clarified if the court chooses to do so. All right, thank you. Are there any further questions from the court? No? Okay. Thank you, Ms. Jones. Mr. Holchek, you may reply. Yeah, Judge, this is, the injured worker did control the commute, and he made it work for him. He was within local 597. He didn't want to have long commutes. He moved to be closer to home to local 23. Local 23 has specific boundaries, as we talked about earlier. And he was within those boundaries during that time. So the fact that he moved and was in the boundaries of local, he controlled the commute. If he didn't want to, if he wanted to, you know, if he wanted to live closer, he could move, you know, he could have moved closer inside those boundaries like he did. He didn't want to have a long drive, so he controlled it. Counsel said that if he was given a job 200 miles outside of that, away from his home, well, the local, if you look at the map, and I think it's described in the CBA, it's about, the farthest is about a 25 mile commute. So that 200 mile, her 200 mile example is a misnomer. It's not in the, it's not in the, in the locals of 23's jurisdiction. That would, that could make him a traveling employee if he was forced to have a super commute. I'll describe that as a super commute. Now the cases, she said, you'd be overturning just a plethora, you name it. I think she named, she named every case. So Alstrom, Wright, Curtis, boy, I killed that pronunciation more. It's, I can't, I'm having a hard time pronouncing it, but we look at, we can go case by case. Those all had additional factors that made the control, that gave the employer control. In Sostom, for example, he was either driving a personal car and getting reimbursed mileage, or he was driving a company car. In Wright, he was there for months. Mr. Boyden wasn't there, wasn't traveling, wasn't away from his home for months. He was staying at home every night. Clearly distinctibles. Curtis, the branch manager, going between jobs, between branches every day. There wasn't a, very few days was he not traveling between jobs. So the travel was inherent in the job. Every one of those cases talks about an additional factor that needs to be present. In this case, it was his normal commute. He wasn't paid compensation. He wasn't driving a company truck. He wasn't being compensated. He didn't go to, he didn't have any tools on him. He is an under no common law duty. He was within his boundaries. He only worked again, the one, he only worked one day when he did the Chrysler orientation off the premises. Comparing him to general public, he was no different than the general public at any time. Besides the CBA describing the job site as the premises, clearly the case law establishes his job site as the premises. That was one of the major findings in Newberg. And again, the specific finding in Joan versus Mormon. So the, her idea about this isn't an expansion. This is a vast expansion. This is a, this is a, an amazing expansion and would be, and it would be overturning all those cases because now we just look at, hey, was it, was it the one job site or not? And if it's not, then they're a traveling employee. That would, that would overturn all those cases, which all have additional factors giving the control. Mr. Boyden had the control of his commute the entire time. He decided to move from local 597 to local 23. So the idea that he didn't have control, it has none of the other factors that other case law has, is, is, is errant. And I think that her, her proposed new rule would be not only a great expansion, but unworkable too. It would lead to increased litigation of like, well, was it, was it, were they only at one job site? And then you, the inequities of the two workers, one goes to one job site for two years. The other one move, you know, works at a job site for two years and goes one day to another job site. Now they're a traveling employee or they wouldn't before. I think it's unworkable, untenable, and a vast expansion of, of the traveling employee case law. And I don't think that's what Newburgh-Perrini, the Supreme Court venture Newburgh-Perrini, I apologize, wanted. And it would be overturning all the cases that you saw, which clearly all had additional factors. So with that, I ask that you reinstate, sorry, do you adopt the decision, the commission decision of November 18th, 2021, which is, should be, which is in my opinion, directly on point. I'll rest unless there's any other questions. Further questions from the court? No, I don't, don't believe there are Mr. Olchek. Thank you. And thank you, counsel, both for your fine arguments in this matter. This morning, it will be taken under advisement, a written disposition shall issue. And at this time, the clerk of our court will escort you out of our remote courtroom and we'll proceed to the next case. Thank you, your honors.